May it please the Court, it's Gerald Smith for Defendant Appellant Joseph Roberts. Your Honor, there are two issues before the Court. One is whether the district court erred in denying the suppression motion that was heard basically two times. Mr. Roberts had appointed counsel. The suppression motion was denied. He pled guilty, sought new counsel, was appointed new counsel. The plea was withdrawn and the suppression motion was re-heard. The second issue has to do with whether there was plain error in not considering the safety valve and reducing his offense level by two levels. With respect to the suppression motion, the issue is whether the Border Patrol, who's charged with investigation and arrests and with respect to immigration violations, had the authority, without probable cause, to stop, detain, and ultimately arrest Mr. Roberts when it's clear from the record that what they were doing was, in fact, related to drug investigation and not to immigration matters as is required by statute. What do we know about cross-delegation? Are these fellows ordinarily cross-authorized to do drug investigations? There is nothing in the record to indicate that, Your Honor. And we're relying on the statute, AUSC 1357A, which says that Border Patrol agents may investigate and, in fact, arrest in crimes other than immigration matters if, during that time that they are doing the investigation and come across this offense that they have probable cause to believe occurred, they are involved in immigration investigations. I believe it's clear from the record and from the testimony of the officers, of the agents, that they were investigating what they believed to be a drug crime. They saw this vehicle in a remote area. Even the reasonable suspicion is without any real basis because it was an area that was remote, but by the officers' own testimony, it was also an area where hunting and fishing and camping occurred. The fact that it was early morning, hunting, fishing, and camping occurs early morning. Why didn't you bring this up in your original briefing? Your Honor, I believe it was. Perhaps it was unartfully brought up. It was brought up in the district court at the second suppression hearing by the submissions of the second appointed counsel. Let me ask you another question. What are you going to do with our case, United States v. Soto Comancho, in 1995, where we say border agents are cross-designated as drug enforcement agents and customs agents and are trained to detect drug smuggling as well as alien smuggling? Your Honor, I would rely upon the statute, which clearly states that that's not the case. The Border Patrol is a creature of statute. That agency is created by Congress. They are delegated certain responsibilities by Congress, and Congress has said that they are limited to immigration violations. And I don't think... Are you giving up on your reasonable suspicion argument? No, Your Honor, I am not. I believe that the reasonable suspicion... What's the standard of review that I have? I would argue, Your Honor, that it is plain error because the district court simply did not. Well, just a minute. I believe that it's de novo review of the law, application, but then the plain error only does to the findings of the facts. Yes, Your Honor. And so I have to look at the district court's decision as to how he found the facts, don't I, and find if there's anything there that's plain error. What did he... I read the findings of the facts of the district court. In fact, it was all in a hearing, so I had to type them out so I'd have them right in front of me. I don't find anything in his findings of fact that were wrong. So my only deal is that I have to then apply the law of the circuit against those facts. What was wrong in what he found as facts? Plain error. I didn't find anything. Frankly, he had everybody in front of him, had a chance to listen to everybody, decide what to do, and he found some facts. Then I've got to find that it's plain error if I'm going to destroy those. I couldn't find it. So then I go to whether he applied the right law, reasonable suspicion. If I go to U.S. v. Burber-Tonoco and the totality of the circumstances, giving the characteristics of the area, the proximity of the border, the patterns of the traffic, the previous ailing or drug smuggling in the area, the behavior of the driver, the appearance and behavior of the passengers, the model and appearance of the vehicle, the officer's experience, which is what they tell me, then I can find reasonable suspicion. I don't have to have all those, but if I apply that right to that, it seems to me reasonable suspicion. How did it wrong? Your Honor, I believe it's wrong because of what the court left out of the facts. The court left out of the facts, what I mentioned earlier. Well, he's the one who gets to see the witnesses. He's the one who knows what he believes and what he doesn't. So then he finds the facts. And the facts according to the government's witnesses, which you are impliedly saying that the district court can believe what part of them he wants to. But I think that there is no dispute with respect to what I mentioned earlier, that this area is used for camping and hunting. There was a great deal of emphasis placed upon the fact that it was a remote area. It was early in the morning. Supposedly, this wasn't a road which led to any lakes. Is that accurate and in the record? I believe that it's a dead-end road and there's no indication in the record that there were lakes or hunting or camping at the end of that road. There's nothing to indicate that there was not either. But there are other explanations, and I think that the court did not pay attention to the explanations that were given, that Mr. Roberts was looking at the property and, again, that is a matter that the court can give belief to or not. But the testimony by the agents themselves, I think, is something that was somewhat ignored. Why was it plain error for the district court not to give him a reduction for, I want to say, safety valve? Well, I think that the plain error standards that are cited in the brief and come from the VCO case, that there was error that was plain, affected substantial rights. When nobody raised to the district court judge, they said, hey, judge, judge, how about two points off for safety valve? No, it wasn't. And if it had been and the court had rejected the idea, then we wouldn't be here on a plain error. What's there in the record, though, that shows that he qualified for the safety valve? That's all I know. There's the court's own statement. Mr. Roberts, prior to his first plea, had engaged in free talk and agreed to testify for the government. The court found a sentencing that had the target of that investigation, who was connected with the offense that Mr. Roberts was involved in. Had that person not been killed by flying a plane into the side of a mountain, Mr. Roberts would have testified and would have qualified for a substantial assistance. It looked like the big area of concern here is factor five for the safety valve, that is whether he came clean with his full knowledge and understanding of his criminal activity. And especially a problem when he failed to tell all to protect his girlfriend since she was somewhat involved in the crime in the first place. But the court found at sentencing that he would have qualified for a reduction on substantial assistance. It's inconceivable that someone would get substantial assistance. Well, you'd get substantial assistance for helping the government prosecute somebody else who's not even connected with the particular offense for which you're on trial. So they're not identical. Substantial assistance and safety valve are not identical. That's correct. And it's my contention that the safety valve is something that comes before substantial assistance, that if a person qualifies for the safety valve, they would strike that. If they qualify for substantial assistance, they would necessarily qualify for the safety valve because part of the plea agreement is that he give all the information that he has, that he talk and give the truthful and complete information. And at sentencing, the court made that finding that he would have and stated that the government agreed with that. And if the government agreed that it was only the death of the target that prevented the substantial assistance, then the government necessarily agreed that Mr. Roberts had been complete and honest in forthcoming in the information that he provided. And I see that I've run over time. I'll give you a minute. Let's hear from the government. Thank you. Well, good morning, and may it please the Court. I'm Jared Kimball from Spokane, from the U.S. Attorney's Office. Good to be here. Your Honor, I'm going to take the issues out of order, if it pleases the Court, and deal with the issue of the safety valve concerns, and then I'll address the Terry Stopp and the border activity. I have to admit, Your Honor, I spent a lot of time looking at this case and reviewing cases last night, re-reading the record as I sat in my hotel room watching the Gonzaga Bulldogs lose the basketball game. And I'm before the Court today, quite honestly, at a position where I'm going to agree that there was a vacancy or a gap in the record that we all, and being well-meaning people in the trial court, Judge Nielsen, myself, and the defense attorney, that there was a gap between the sentencing hearing and the lack of a discussion about safety valve. There's a variety of reasons why I think it didn't occur. I think all innocent enough, but as I thought about this last night and looking at the standard for plain error, I think as a prosecutor representing my client, I take no pleasure in seeing a person sentenced to a range that may be too high. And I think what's, looking at my brief, I argued very, I think, vociferously, that this defendant would not meet, as Judge Smith has noted, subcategory F5 of the safety valve consideration, which is the telling all component. And it may very well be that Judge Nielsen would find that, but we didn't have that conversation. And so I honestly think, standing before the Court today, that the appropriate remedy is for that limited remand. Because the, and honestly, looking at the decisions that discuss safety valve, with the Thresher decision and also the real decision, Lopez in particular, it may be that this defendant is not, cannot benefit from that. And as the Court noticed in looking at the record, he lied on multiple occasions. That doesn't make any difference. We have case law that says that they can lie at the very beginning, but as long, you know, until they get right up to the time of sentencing, if they sit down and give all they know and tell the truth, they qualify for the safety valve. I think you're right, Judge. Even if they lied at the beginning. It's a very generous standard. It's a very generous standard, and that goes with the congressional intent for why they dropped the statute. So I think, Your Honor, and this is court, I think that the appropriate remedy is for that conversation to occur with Judge Nielsen. And it may be that I convinced Judge Nielsen that this defendant does not satisfy F-5, but we didn't have the conversation. And in part, it's because this person was on a substantial assistance track. He decided to pull the plug on it. I don't want to talk anymore. I'm backing out. He also had multiple criminal history points going into the sentencing. And at the last moment, probation realized, you know, wait a second, he only has one point. And so in our minds, we weren't there in terms of considering safety valve. And so I really think that's the appropriate remedy. And Judge Nielsen could then make a decision at his discretion if F-5 is satisfied. Going on to the Terry issues, Your Honor, I would have to argue that on this record, we have conduct by the Border Patrol that is very much in keeping with what Terry defines as appropriate, that is, reasonable suspicion of criminal activity being afoot and then diligently and promptly taking measures to either dispel or confirm the reasonable suspicions of the agents. Your Honor noted the issue of the area. This is a very remote area. And the Court has, as part of the exhibits in this record, some of the photographs and mapping of this area. It's right along the border. It's extremely isolated. Dirt roads. There's no houses, et cetera. You have motion sensor activity at 410 in the a.m. The Border Patrol is alerted to that. Five minutes later, this defendant's vehicle is seen leaving the border area with a full load in the back of his pickup, a crude tarp that covers it. The Border Patrol diligently follows the vehicle, finds out that this person had entered from Canada, even though he had Idaho plates, I think the day before, which is somewhat curious, follows him through the very, very tiny town of Molson onto the paved highway where he eventually effectuates a stop. During the course of that process, he summons aid from a cohort with Border Patrol Officer or Agent Rowell. Agent Rowell positions himself in a standard, I guess, officer safety manner at the passenger side rear of the car. He can see that, and I guess commonsensically, as we later learn from the sentencing hearing, the person who picks up narcotics at the border in a hurried fashion from others may not be the most, I guess, fastidious in how they load and cover their cargo, which is what has borne out here. But they couldn't see anything, actually. They didn't know what was under the tarp. Correct. Well, they did, Judge. The only twist was that as Agent Rowell stood on the passenger side, he saw that the tarp had, given its crude fashion, had ruffled up in the wind as it drove, something the defendant admitted plainly in the suppression hearing, that he himself realized the tarp was flapping. He could see one corner had pulled up. Agent Rowell could see, based on his experience in Canadian marijuana coming in hockey bags as basically a daily occurrence, Rowell could see a hockey bag as that tarp was flipped up, which, of course, piqued his interest. That's about the same time that Agent Rowley learned that this defendant had a prior narcotics arrest or conviction, and immediately following that, consent was given, and a search ensued, which revealed the marijuana. Now, he consented to the search. They could look at what was in the truck. Was that a consent to open the hockey bags, too? Your Honor, I thought about that, and I think what is controlling is that he made no effort to limit the scope of his consent. He said they asked him, can we look in the back of the truck? And had he said or voiced objection to looking in the bags, I think Your Honor's point would be very well taken. He could retract that nature of the consent, which he did not do. And their request of him was very pointed, which is look in the back of the truck. It's an open request. He had no protestations when the bag was opened, and marijuana was quickly discovered. Shouldn't they have said after they saw the hockey bags, really, and said, can we open it? Well, I think, I think, well, I would say no, Judge, only in the sense that because his general consent was unqualified. But it was to look in the back of the truck. That's correct, Your Honor, which included the hockey bags. And I think they could have asked that follow-up question, but I don't think the law assigns any error to those cases. So I think in looking at the time of the sequence of events, it's very concise. It's very prompt. And you don't have a stop that is drawn out necessarily. It's very unlike some of the cases that defense has cited, Sigmund Ballesteros and also the Chavez-Valenzuela cases, where there was really not much that the officer or agent could hang his or her hat on as to wrongdoing. They kind of drew out the stop to see what would develop, which this Court found was not appropriate. In this case, it's quite the opposite. Things are gelling and happening very rapidly, and I believe the duration of the stop was only about 12 minutes before the bag was seen, consent was given, and this gentleman was placed under arrest. So I think it is an appropriate stop, much in keeping with Terry. A good old Officer McFadden in the streets of Cleveland suspects something's wrong, acts upon his instincts, and also looks for reasonable components, objective facts that are supporting his hunch. And in this case, as it did in the Terry case, it played out quickly that the officer was right. And this stop, I would argue, the Court is quite appropriate. What about this cross-authorization stuff? Were these officers cross-delegated or? Your Honor, yes, Judge Fletcher. I heard that argument, and it's not raised in any form in the pleadings before this Court. It's not in the blue brief. Excuse me, Your Honor? It's not in the blue brief. I don't think it's in the reply either, the gray brief. I don't think it's in either. And so I would have to – I heard Judge Smith reference a case that talks about cross-designation. It sounds accurate, but having it – it's not properly phrased before the Court, and so I don't know that my response is any more enlightened than the response Judge Smith provided regarding that citation to authority. Your Honor, those are the comments I have. I would stand for questions or allow counsel to make his remarks. Thank you. Thank you. Just very briefly, and first I do want to thank the government for its forthrightness in conceding the issue with respect to the safety policy. That's very refreshing. I like to hear that. And with respect to what was raised, Your Honor, I believe it's docket number 108 that was submissions in the district court where the issue of the limitations on the Border Patrol's authority was brought up. It's supposed to raise them in your blue brief. It was raised to the extent that they did not have the probable cause, which they have to have, and that they were investigating what they thought to be a drug crime. That was raised. Based upon what the government said in its brief, we did emphasize the statute. And, you know, I think that the issue of the cross-referencing, the cross-delegation, is something, as I said earlier, that's trumped by the statute. Okay. Thank you. We appreciate your arguments. The matter will be submitted.
judges: Fletcher, Paez, Smith